EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Christian Serrano Chang<br><br>Recurrido | Certiorari<br><br>2015 TSPR 102<br><br>193 DPR ____ |
|---|---|

Número del Caso: CC-2015-368

Fecha: 21 de julio de 2015

Oficina de la Procuradora General:

       Lcda. Margarita Mercado Echegaray
       Procuradora General

       Lcdo. Iván E. Rivera Labrador
       Procurador General Auxiliar

Materia: Resolución y Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.

Christian Serrano Chang
    Recurrido

*Certiorari*

CC-2015-0368

RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de julio de 2015.

Atendida la petición de *certiorari* presentada por la Oficina de la Procuradora General, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Kolthoff Caraballo expediría. El Juez Asociado señor Rivera García emitió un Voto Particular Disidente al cual se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón.

Aida Ileana Oquendo Grauleau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico                              *Certiorari*

    Recurrido

       v.
                                        CC-2015-0368
Christian Serrano Chang

    Peticionario


Voto Particular Disidente emitido por el Juez Asociado señor RIVERA GARCÍA al cual se une la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón


En San Juan, Puerto Rico, a 21 de julio de 2015.

Respetuosamente disiento del curso decisorio que hoy ha optado seguir una mayoría de este Tribunal al determinar no expedir el recurso de *certiorari* de epígrafe. Estoy convencido de que esta Curia ha desatendido la oportunidad de expresarse sobre importantes **asuntos revestidos de un alto interés público.** Por un lado, deniega revisar una determinación del Tribunal de Apelaciones que ordenó la celebración de un nuevo juicio en un caso en que se juzgó a un ciudadano por cometer el delito de asesinato en primer grado contra un niño de 2 años de edad. Por el otro, el Sr. Christian Serrano Chang, en su apelación ante el foro apelativo intermedio, presentó sendas

alegaciones relacionadas a presuntas violaciones de sus derechos constitucionales durante ese proceso criminal. Entre estas, violaciones a la garantía de un debido proceso de ley y al derecho a tener un juicio justo e imparcial.

En síntesis, son dos las razones que me compelen a disentir con vehemencia. Primeramente, debo destacar que los asuntos de interés público implicados en este caso **ameritaban ser auscultados con más detenimiento**, contrario a como se hizo en el corto periodo en el que se estudió el expediente para decidir si se expedía o no el auto. En segundo lugar, el trámite que prosiguió este caso me obliga a expresarme sobre los fundamentos por los cuales se decide expedir o no un recurso de *certiorari* y enfatizar que, la decisión de proceder de una u otra manera, no refleja la determinación que eventualmente haya de tomar este Foro respecto al pronunciamiento judicial recurrido. Dicho esto, procede exponer una apretada síntesis de los hechos procesales acaecidos en este caso y argüir el razonamiento que me induce a diferir del criterio mayoritario.

En el recurso de epígrafe, un jurado emitió un veredicto de culpabilidad en contra del señor Serrano Chang por el delito de asesinato en la modalidad estatuida en el Art. 93 (b) del Código Penal, con el delito base de maltrato intencional. Luego de dictada la correspondiente sentencia, el convicto acudió al Tribunal de Apelaciones y

arguyó, entre otros señalamientos de error, que el Tribunal de Primera Instancia incidió al permitir que el Ministerio Público "presentara prueba irrelevante, impertinente, inflamatoria y perjudicial al acusado con el único fin de crear pasión, prejuicio indebido y parcialidad en el jurado".[1] Así también, sostuvo que el foro primario había incidido al "no permitir objeciones en los argumentos de cierre del juicio, permitiendo argumentos altamente inflamatorios por parte del fiscal de los cuales no se pasó prueba".[2] Una de las contenciones del peticionario fue que el Ministerio Público presentó en su turno de cierre una nueva teoría del caso "creando pasión, prejuicio indebido y parcialidad, confusión e indujo a error a los miembros del jurado".[3] En específico, el peticionario planteó que el fiscal tergiversó la prueba presentada para hablar sobre delitos que no estaban incluidos en el pliego acusatorio.

Luego de estudiar estos y otros argumentos, el foro apelativo intermedio dictó sentencia el 24 de febrero de 2015, notificada a las partes el día siguiente. Al hacerlo, decidió revocar la sentencia apelada y ordenó la celebración de un nuevo juicio. En esencia, el Tribunal de Apelaciones concluyó que los referidos errores fueron cometidos y que ello violó los derechos del peticionario a tener un juicio justo e imparcial y un debido proceso de

---

[1] Véase, Alegato de la parte Apelante, Apéndice de la petición de certiorari, pág. 58.
[2] Id.
[3] Id.

ley. El Tribunal expresó que los siguientes asuntos conmocionaron su ánimo judicial: (1) manifestaciones hechas por el Ministerio Público **durante el juicio** que catalogó como altamente inflamatorias y **no sustentadas por la prueba**; (2) que el Ministerio Público presentó una nueva teoría basada en la conducta sexual del acusado y (3) que se le permitió al fiscal indicarle al jurado que podía consultar con una psicóloga, que era miembro de ese jurado, en cuanto a si una testigo decía o no la verdad. Veamos estos puntos con más detalle.

El Tribunal de Apelaciones consideró que las siguientes manifestaciones de índole sexual relacionadas al peticionario, hechas por el Ministerio Público en los argumentos finales, fueron altamente inflamatorias:

> […] El acusado encima de Dylan. La nena hacía así con la cadera. ¿Qué juego es ese? Un padrastro a un niño. ¿Qué juego es ese? Le hizo creer que era un juego, una persona que ya había sido descubierta que tenía una doble vida, bisexual. Homosexual, que eso se respeta, eso son derechos, no, no, no me vayan a malinterpretar. Pero no podía descargar ese derecho en un niño. No podía. Eso es inmoral, eso es delito. Y ese era el jueguito que le tenía a Dylan. Ahora es que podemos entender por qué el acusado le decía a Dylan "ven aquí ahora". "Ven aquí ahora". "Ven aquí ahora". "Dylan, ven aquí ahora". ¿Y qué hacía Dylan? Llorando, llorando iba como un cordero al matadero sin que nadie lo pudiera ayudar. Y allí lo metió en el cuarto, porque ya Dylan sabía lo que venía. Ahora es que podemos entender porque se, se, se aterrorizaba, el niño, cuando veía al acusado. […] Le hacía lo que dijo [N.G.S.][4] que hacía. ¿Qué son (sic) eso? ¿Fantasías sexuales del acusado? ¿El acusado toqueteaba

---

[4] Para propósitos de **proteger la confidencialidad de la identidad de la menor** se proveen únicamente sus iniciales.

a Dylan? Esa es la razón por la que este niño, se aterraba.[5]

Otra de las expresiones reseñadas por el foro apelativo intermedio fue cuando el fiscal hizo alusión a que no dejaran al acusado libre en la calle "como maestro de educación especial […] como un lobo rapaz, para comerse a esos niños en la escuela".[6] A juicio del foro recurrido esas manifestaciones fueron impertinentes, altamente inflamatorias, no encontraban apoyo en la prueba e imputaron la comisión de un delito de abuso sexual que no formó parte de la acusación. La sentencia del Tribunal de Apelaciones lo consigna de la siguiente manera:

> Las manifestaciones reseñadas nos ocasionan un profundo sentido de rechazo por dos razones fundamentales: (1) por ser **peyorativas, impertinentes, altamente inflamatorias**; (2) porque **no encuentran apoyo en la prueba presentada** y; (3) porque **le imputó la comisión de lo que el Ministerio Público catalogó explícitamente como un delito que no formó parte de la acusación.** Destacó la aparente **orientación sexual** del apelante de bisexual u homosexual con una carga moral indebida al indicar que tenía una doble vida. Más importante aún, <u>**tergiversó el testimonio de la menor de edad**</u>, [N.G.S.], para **insinuar que el apelante** <u>**abusaba sexualmente de la víctima**</u>, Dylan. Reiteró que el apelante **descargaba sus** <u>**fantasías sexuales**</u> **sobre el menor Dylan.** Incluso catalogó esa conducta como <u>**inmoral**</u> **y constitutiva de un "delito".**
>
> En el juicio, al ser contrainterrogada por la Defensa, la menor [N.G.S.] testificó sobre los juegos que ella y su hermano Dylan jugaban con el apelante. En ningún momento [N.G.S.] expresó que el apelante se le trepara encima a Dylan ni mucho menos que lo "toqueteara" de manera inapropiada. Lo que sí pudimos apreciar fue la

---

[5] Sentencia del Tribunal de Apelaciones, Apéndice de la petición de *certiorari*, págs. 27, 28.
[6] Id., pág. 34.

> **insistencia del Ministerio Público en <u>forzar su interpretación</u> de lo que la menor testificaba.** (Énfasis y subrayado en el original).[7]

Finalmente, el Tribunal de Apelaciones concluyó que las instrucciones que emitió el Tribunal de Primera Instancia no fueron suficientemente específicas, completas, enérgicas y severas para reparar el perjuicio creado al acusado. Además, sostuvo que el foro primario incidió al no permitir objeciones durante dichas argumentaciones finales. Sin embargo, coligió que a pesar de ello, y considerando que las manifestaciones impropias por parte del Ministerio Público fueron numerosas, las objeciones que presentó la defensa en esa etapa fueron oportunas y suficientes.

Inconforme con esa determinación, la Procuradora General compareció a esta Curia mediante el recurso de *certiorari* de epígrafe y señaló la comisión de los cuatro errores siguientes:

1. Erró el Tribunal de Apelaciones al concluir que el Juez del T.P.I. privó mediante sus instrucciones, al acusado de levantar objeciones durante la argumentación final.

2. Erró el Tribunal de Apelaciones al concluir que la defensa objetó de manera oportuna los alegados comentarios impropios que realizara el Ministerio Público durante su argumentación final.

3. Erró el Tribunal de Apelaciones al utilizar la Regla 105 de Evidencia para evaluar los alegados comentarios impropios del Ministerio Público durante la argumentación final, y al ordenar la celebración de un nuevo juicio, cuando el mecanismo apropiado para evaluar dichos comentarios, bajo los hechos de este

---

[7] Id., pág. 28.

caso, es la Regla 106 de Evidencia (Error extraordinario).

4. Erró el Tribunal de Apelaciones al concluir que el efecto acumulativo de los alegados comentarios impropios que realizara el Ministerio Público durante su argumentación de cierre tuvieron un efecto sustancial en el fallo de culpabilidad que emitiera un jurado compuesto por los pares del Sr. Christian Serrano Chang.[8]

Como parte del trámite ordinario, la Procuradora General presentó su petición de *certiorari* el 8 de mayo de 2015. Subsiguientemente, la Sala de Despacho III, en su reunión de 5 de junio de 2015 recomendó expedir el recurso. De esta forma, el caso se incluyó como parte de los recursos a ser discutidos en la reunión del Pleno de 26 de junio de 2015. Ese día, una mayoría de este Tribunal decidió no expedir el mismo.[9] Sin embargo, tal y como mencioné, luego de estudiar la petición de la Procuradora, en unión a la transcripción de la prueba oral vertida en el juicio, me veo precisado a pronunciarme sobre las razones por las cuales disiento del curso decisorio de denegar la expedición del recurso. Me explico.

Cabe destacar la necesidad de que este Tribunal estudiara detenida y sosegadamente la **totalidad** del expediente de este caso, **incluyendo los autos originales del mismo**. Ello, pues es más que evidente que los argumentos presentados por la Procuradora General **no**

---

[8] Petición de *certiorari*, pág. 9.
[9] Tanto el suscribiente como la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Feliberti Cintrón expedirían.

**podían analizarse en un vacío.** Nótese que las razones por las que el Tribunal de Apelaciones revocó el veredicto del jurado se sostienen en situaciones suscitadas **durante la celebración del juicio.** Y como es de esperarse, las partes citan en los respectivos escritos que han presentado ante este foro y ante el Tribunal de Apelaciones, únicamente fragmentos aislados de la transcripción de la prueba oral, que entienden, son los que sustentan sus posturas. Por consiguiente, este análisis era absolutamente necesario, pues de lo contrario, ¿cómo podría reclamar este Tribunal que ejerció su deber discrecional de manera informada y responsable? ¿Cómo podría la ciudadanía tener la confianza de que la causa presentada ante este foro se estudió y analizó con la atención necesaria?

Ciertamente, no todos los recursos que llegan ante este foro requieren el mismo grado de análisis y rigurosidad. Ahora bien, soy del criterio que el que hoy nos ocupa sí lo exigía.  Ante los errores puntualizados por la Procuradora General, la mayoría que decidió no expedir debió reflexionar, **como mínimo,** sobre las siguientes interrogantes. Como cuestión de derecho, ¿el alcance de las manifestaciones del Ministerio Público fueron lo suficientemente graves para concluir que hubo perjuicio indebido al acusado, justificando un nuevo juicio? ¿Cuál es la base fáctica que existe para concluir que los comentarios de la fiscalía afectaron los derechos sustanciales del acusado? ¿Fue influenciado el veredicto

por la conducta presuntamente impropia del fiscal? ¿De no haberse cometido el alegado error, el resultado del veredicto del jurado hubiera sido el mismo? ¿Cuáles fueron las instrucciones generales y específicas impartidas a los miembros del jurado por la Juez que presidió el juicio? Dichas instrucciones, ¿subsanaron el perjuicio, si alguno, causado al acusado debido a las manifestaciones del Ministerio Público? ¿Pudo la defensa objetar de manera suficiente y oportuna las manifestaciones presuntamente impropias? ¿Qué efecto, si alguno, tuvieron las instrucciones dictadas por la Juez que presidió el juicio en el intento de la defensa de objetar dichas manifestaciones?

Contestar cada una de estas interrogantes era un ejercicio imperativo para poder ejercer responsablemente nuestra discreción al determinar si se expedía o no este recurso. Ello requería un análisis profundo y sosegado del expediente del caso y de la norma legal aplicable. Cumplir con ello exigía de forma insoslayable examinar **la prueba presentada en el juicio <u>en su totalidad</u>**. Esto implica una rigurosa evaluación de la transcripción del juicio en su fondo, consistente en sobre más de 1,700 páginas, además de aquilatar toda la prueba desfilada en el juicio. Es decir, era indispensable apreciar el testimonio de **todos los testigos y de la prueba pericial forense**. Así también, era preciso revisar el **contenido comprensivo de las instrucciones** que el Tribunal le impartió al jurado

durante el transcurso del juicio y luego de finalizados los informes finales. Por último, y no menos importante, era necesario estudiar con detenimiento el contenido y el fundamento de cada una de las objeciones de la defensa y de la fiscalía para así escudriñar su efecto jurídico.

Es ineludible que las cuestiones **de alto interés público** inmersos en esta controversia exigían de este Tribunal una valoración imparcial de la prueba, y un estudio sereno y sensible sobre la pureza del procedimiento judicial. Lamentablemente, me veo impedido de afirmar que en efecto esto haya ocurrido así. La confianza depositada por el Pueblo en sus instituciones de justicia exige que ejerzamos nuestra discreción de manera cautelosa y ponderada. Es desafortunado que en este caso la mayoría optara por denegar el recurso de autos, bajo el palio de la discreción. En vista de lo anterior, reafirmo mi criterio de que el recurso de título debió haber sido expedido. Precisamente, la propia Regla 30 (8) del Reglamento del Tribunal Supremo dispone que, al momento de determinar si se expide o no un recurso discrecional, el Tribunal deberá considerar "**si la cuestión planteada exige una consideración más detenida a la luz de los autos**, los cuales deban ser elevados y de alegatos más elaborados". 4 LPRA Ap. XXI-B. Cónsono con ello, procede elaborar el segundo fundamento que sostiene mi postura a favor de la expedición de este *certiorari*. Veam os.

Estoy convencido de la inclinación errada de algunos miembros de esta Curia, que postulan que un recurso de *certiorari* se expide necesariamente para revocar la determinación de la cual solicita revisión. Nada más lejos de la verdad. Los asuntos planteados en este caso merecían una expresión de este Tribunal **independientemente de cuál hubiese sido el resultado final de nuestra adjudicación**. Dentro del análisis de las controversias esbozadas, posiblemente se hubiese llegado a la misma conclusión a la que llegó el Tribunal de Apelaciones, o se hubiese decidido por otro curso decisorio. Empero, el que eventualmente se fuera a resolver de una u otra manera no debe incidir o afectar nuestro ejercicio discrecional para expedir un recurso de *certiorari*. Es mi convicción que este recurso reunía los requisitos necesarios, conforme a los criterios pautados en la Regla 30 del Reglamento del Tribunal Supremo, <u>supra</u>, para inclinar la balanza de nuestra discreción a favor de que este se expidiera.

Como se sabe, el Tribunal Supremo de Puerto Rico tiene jurisdicción para revisar, mediante auto de *certiorari* a ser expedido discrecionalmente, las sentencias finales del Tribunal de Apelaciones que dispongan de un recurso de apelación, recurso de revisión administrativa o recurso de *certiorari* presentado ante el Tribunal de Apelaciones. Art. 3.002 de la Ley 22-2003, 4 LPRA 24s. Este tipo de recurso es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía

revisar las determinaciones de un tribunal inferior. IG Builders Corp v. 577 Headquarters Corp., 185 DPR 307, 337 (2012). Y aunque ha sido catalogado como uno "altamente discrecional"[10], esa discreción no opera en el vacío, pues existen unos parámetros que la guían. Es de conocimiento general que el concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones. IG Builders Corp v. 577 Headquarters Corp., supra, pág. 338. Sin embargo, en el ámbito judicial, la discreción no debe hacer abstracción del resto del Derecho. Pues como hemos reiterado, la discreción "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera". Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).

Como bien nos explica el entonces Juez Presidente de este Tribunal Supremo, señor Federico Hernández Denton, este foro, en el ejercicio de su poder inherente para lograr los fines básicos de la justicia, fue ampliando progresivamente la naturaleza del recurso de *certiorari* alejándose de los criterios rígidos que en antaño lo constreñían. F. Hernández Denton, El certiorari en el proceso apelativo de Puerto Rico y Estados Unidos, Publicación semestral del centro de estudio de justicia de las américas, Núm. 13, 2008, pág. 33. Adoptando así, múltiples excepciones con el fin de lograr la justicia sustancial. Id. Así, el Reglamento del Tribunal Supremo

---

[10] Véase, H.A. Sánchez Martínez, Derecho Procesal Apelativo, Lexis Nexis, 2001, pág. 386.

contiene criterios que han de guiar el ejercicio de nuestra discreción. Específicamente, la Regla 30, <u>supra</u>, preceptúa los distintos puntos que deberá considerar este Tribunal para determinar si expide o no un recurso. Estos son los siguientes:

(1) si el remedio y la disposición de la sentencia o resolución recurrida, a diferencia de sus fundamentos, son contrarios a derecho tomando este último en su más amplia acepción;

(2) si la cuestión planteada es novel,

(3) **aun cuando no sea novel, si la expresión de la norma es importante para el interés público,**

(4) si los hechos expuestos presentan la situación más indicada para el análisis del problema planteado,

(5) si la norma existente debe ser redefinida o variada,

(6) si existe conflicto entre decisiones de las salas del Tribunal de Primera Instancia o entre paneles del Tribunal de Apelaciones sobre el asunto en cuestión,

(7) si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el tribunal de instancia,

(8) **si la cuestión exige una consideración más detenida a la luz de los autos, los cuales deban ser elevados y de alegatos más elaborados,**

(9) si la etapa en que se presenta el caso es la más propicia para su presentación,

(10) si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable respecto a la solución final del litigio,

(11) **si la concesión del auto o la emisión de una orden de mostrar causa contribuyen de otro modo a las funciones de este tribunal de vindicar la ley y pautar el derecho en el país,**

(12) si se ha cumplido con los otros requisitos que establece el reglamento del Tribunal Supremo y (13) si la expedición del auto o de la orden de mostrar causa evitan un fracaso de la justicia. (Énfasis nuestro) 4 LPRA Ap. XXI-B.

Muchos de estos elementos coinciden con los contenidos en la Regla 40 del Tribunal de Apelaciones, sin embargo, como la función de ese y este foro judicial es distinta, hay criterios que aplican únicamente al Tribunal Supremo porque están orientados a "la función preeminente de [este] foro como tribunal de última instancia de pautar el derecho en el país." H. A. Sánchez Martínez, Derecho Procesal Apelativo, Lexis Nexis, 2001, pág. 560. En específico, los siguientes cinco criterios son atinentes a la función exclusiva de esta Curia: (1) si la cuestión planteada es novel; (2) si, aun cuando no sea novel, la expresión de la norma es importante para el interés público; (3) si la norma existente debe ser redefinida o variada; (4) si existe conflicto entre decisiones de las salas del Tribunal de Primera Instancia o entre paneles del Tribunal de Apelaciones sobre el asunto en cuestión; y, (5) si la concesión del auto contribuye de otro modo a las funciones del Tribunal Supremo de vindicar la ley y pautar el derecho en el país. Sánchez Martínez, op. cit., pág. 726. De estos, quiero hacer énfasis en los principios segundo y quinto.

Con respecto al segundo de estos parámetros, nos explica el autor Hiram Sánchez lo siguiente:

>En ocasiones, la controversia no plantea una cuestión novel porque se trata de un asunto resuelto anteriormente, pero su importancia, **por el interés público que conserva, es evidente.** En tales casos, el Tribunal Supremo considera que es conveniente a dicho interés reiterar la norma esbozada anteriormente. No se puede olvidar que la jurisprudencia del Tribunal Supremo desempeña una función social de importancia, en particular, ante conflictos que afectan la convivencia entre los ciudadanos **o el trato de los ciudadanos con el Estado y viceversa.** (Énfasis nuestro). Sánchez Martínez, op. cit., pág. 727.

Por su parte, tenemos el criterio que este autor denomina como "la cláusula residual". Me refiero a que la expedición del recurso contribuya de otro modo a las funciones del Tribunal Supremo de vindicar la ley y pautar el derecho en el país. Al respecto, el autor añade que:

>Este criterio es más bien una cláusula residual que alude a la función preponderante del Tribunal Supremo de vindicar la ley y pautar el derecho. Lo de vindicar la ley resuena en el ánimo de esclarecer el verdadero sentido de la legislación de manera que las personas sepan lo que la ley implica y puedan ajustar su comportamiento y cumplir con sus obligaciones de acuerdo con ésta. Cuando la decisión proviene del Alto Foro y, además, se emite por opinión, su interpretación obliga a todos por igual y no únicamente a las partes en el litigio. Si el recurso no cualifica bajo alguno de los demás criterios, siempre puede ser atendido a tenor con éste.

Y "por si quedara duda", este último criterio "amplía al máximo la potestad cognoscitiva del Tribunal Supremo". Hernández Denton, op. cit., pág. 34. En fin, como nos ilustrara el pasado Juez Presidente Hernández Denton, **"en el ordenamiento jurídico puertorriqueño basta que la concesión del auto de *certiorari* contribuya de algún modo a las funciones del Tribunal de vindicar la ley y pautar**

**el derecho en el país para que el Tribunal decida expedirlo si entiende que es el momento propicio para hacerlo"**. (Énfasis nuestro). Id.

Si atendemos a los parámetros enunciados, es forzoso colegir que **era importante para el interés público** expresarnos sobre la norma aplicable en las controversias planteadas en este caso. En nuestra función revisora, era preciso dilucidar el derecho aplicable cuando el Ministerio Público realiza expresiones que se aduce que causan perjuicios sustanciales a un acusado. Así, esta Curia tenía la oportunidad de revisitar el derecho sobre lo que constituye un error extraordinario y la jurisprudencia de este Tribunal en torno a cuándo procede decretar un nuevo juicio por alegaciones como las planteadas. Al mismo tiempo, era oportuno revisar el derecho atinente a las instrucciones que deben impartirse al jurado ante manifestaciones presuntamente inflamatorias y perjudiciales por parte del fiscal durante los informes finales. En ese sentido, la intervención de este Tribunal era un imperativo para expandir la jurisprudencia puertorriqueña en torno a asuntos importantes **que inciden directamente sobre los contornos de las exigencias del debido proceso de ley durante un procesamiento criminal, particularmente en el contexto de un juicio por jurado.**

Por las razones que anteceden, estoy convencido de que los compañeros de mayoría erraron al negarse a expedir el recurso. Ello, no solo por la necesidad de estudiar con

más detenimiento los planteamientos esgrimidos por la Procuradora General, sino para también retomar y pautar el derecho aplicable ante situaciones como las acontecidas en este proceso judicial. No hay duda de que estamos ante un recurso que es de naturaleza enteramente discrecional. Empero, **la discreción no es un pretexto para desatender las responsabilidades que tiene este Tribunal como foro de última instancia en Puerto Rico**. Es evidente que los criterios preceptuados en la Regla 30, <u>supra</u>, del Reglamento del Tribunal Supremo se conceptualizaron con un claro propósito. Precisamente, ese fin ulterior es que una determinación tan importante como lo es expedir o no un recurso sea el producto de un análisis concienzudo y minucioso. El dictamen de *no ha lugar* por el simple hecho de que se trata de un recurso discrecional no puede tratarse livianamente.

En atención a las consideraciones expresadas, disiento con vehemencia de la mayoría de este Tribunal que se niega a atender un asunto revestido del más alto interés público. Por ello, expediría el recurso de *certiorari* presentado por la Procuradora General.


                                        Edgardo Rivera García
                                           Juez Asociado